NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVE M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 25-130 (RK) <br><br> **MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Steve M.'s[1] ("Steve" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Steve's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

I.  **BACKGROUND**

In this appeal, the Court must answer the following question: Did Administrative Law Judge Matthew Levin ("Judge Levin") properly assess the prior administrative medical findings in the record?

A.  **PROCEDURAL POSTURE**

On May 10, 2022, Steve filed an application for a period of disability and disability insurance benefits, alleging an onset date of October 1, 2021. (Administrative Record ("AR") at

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

48.)[2] Steve, at the time of the subject application, was 56 years old. (*Id.*) The Social Security Administration (the "Administration") denied these requests both initially (*id.* at 67) and on reconsideration, (*id.* at 78). Thereafter, Steve requested a hearing before an Administrative Law Judge ("ALJ"). (*See id.* at 85–86.) On January 9, 2024, Judge Levin held a hearing at which he received testimony from both Steve, represented by counsel, and Eric Pruitt, a vocational expert ("VE"). (*Id.* at 31–46.) On February 8, 2024, Judge Levin issued a written decision, finding that Steve was not disabled. (*Id.* at 17–25.) The Administration's Appeals Council denied Steve's request to review Judge Levin's decision. (*Id.* at 1–6.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on the docket on April 23, 2025. (ECF No. 5.) Steve then filed his moving brief ("Pl. Br.," ECF No. 10), the Commissioner filed an opposition ("Opp. Br.," ECF No. 11), and Steve filed a reply ("Reply Br.," ECF No. 12).

**B.    JUDGE LEVIN'S DECISION**

In his February 8, 2024 decision, Judge Levin held that Steve was not disabled under the prevailing Administration regulations. (*See generally* AR at 17–25.) To reach this decision, Judge Levin analyzed Steve's application under the five-step process for determining whether an individual is disabled, as set forth in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). At Step One, Judge Levin found that Steve had not engaged in substantial gainful activity from his alleged onset date of October 1, 2021 through the date of decision.[3] (*Id.* at 19 (citing 20 C.F.R. § 404.1571 *et seq.*).) At

---

[2] The Administrative Record ("Record" or "AR") is available at ECF Nos. 5-1 through 5-12. This Opinion will reference only page numbers in the Record without the corresponding ECF numbers.

[3] Judge Levin noted that Steve returned to work as a title searcher for three weeks in July 2022. (AR at 19; *see id.* at 35–36.) However, because Steve testified that he stopped working after those three weeks due to his physical limitations, and there were no documented earnings from this period in the record, Judge Levin concluded that this was simply "an unsuccessful work attempt" that did not affect his determination at Step One. (*Id.* (citing 20 C.F.R. § 404.1571 *et seq.*).)

2

Step Two, Judge Levin found that Steve suffered from two severe impairments: diabetes mellitus and a left below-the-knee amputation. (*Id.* (citing 20 C.F.R. § 404.1520(c).) Judge Levin also found that Steve had a "non-severe impairment" of amputation of his right big toe. (*Id.* at 20 (citing AR at 58).) Judge Levin concluded that this impairment did "not more than minimally affect [Steve's] ability to perform work activity," which was corroborated by Steve's own testimony. (*Id.*; *see* AR at 38 ("My right leg, I can use normally, even with the missing toe.").)

At Step Three, Judge Levin determined that Steve did not have an "impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) As a precursor to Step Four, Judge Levin concluded that Steve had the residual functional capacity ("RFC") to perform "light" work, *see* 20 C.F.R. § 404.1567(b), but that any job he performed had to be limited in specified ways:

> [O]ccasional climbing stairs and ramps; never climbing ladders, ropes, or scaffolds; and occasional performance of all postural maneuvers with occasional balance further defined as needing to avoid narrow, slippery and erratic moving surfaces. He must avoid concentrated exposure to temperature extremes, vibrations and hazards such as dangerous machinery and unprotected heights.

(AR at 21.) At Step Four, Judge Levin concluded that Steve was capable of performing his past relevant work as a title searcher. (*Id.* at 24 (citing 20 C.F.R. § 404.1565).) Judge Levin cited testimony from the VE, who explained that someone who could stand or walk for six hours was capable of doing the job of a title searcher. (*Id.* (citing AR at 42–43).) Ultimately, "[i]n comparing [Steve's] residual functional capacity with the physical and mental demands" of the work of a title searcher, Judge Levin found that Steve could perform the job "as actually and generally performed." (*Id.* at 24–25.) Thus, because he could perform past work, Judge Levin concluded that Steve was not under a disability from October 1, 2021 through the date of decision. (*Id.* at 25 (citing 20 C.F.R. § 404.1520(f).)

This appeal concerns Judge Levin's assessment of the prior administrative medical findings ("PAMFs") in the record.[4] (*See* Pl. Br. at 1.) In determining Steve's RFC as the precursor to Step Four, Judge Levin carefully considered "the entire record." (AR at 21.) He began his analysis by reviewing Steve's own testimony. (*See id.* at 22.) Judge Levin found notable that Steve had a prosthetic on his left leg and was able to move around, including by at least sometimes using an electric scooter. (*Id.* (citing AR at 37).) As for daily living, Judge Levin noted that Steve testified to spending his days in front of a computer and "watching programs." (*Id.* (citing AR at 40).) He also noted that Steve testified to being able to lift 50 to 60 pounds and being able to care for himself, including completing household chores, preparing his own meals, and shopping. (*Id.* (citing AR at 39–40).) In terms of his diabetes, Steve did not testify to any significant issues. (*Id.*)

Judge Levin next turned to a Function Report from Steve dated June 5, 2022. (*Id.* (citing AR at 233–241).) He acknowledged that Steve reported no problems with personal care and preparing his own meals. (*Id.* (citing AR at 236).) Further, he observed that Steve reported spending time with others in person, via video chat, and through text messaging, and that he did well with spoken instructions, authority figures, and stress. (*Id.* (citing AR at 238–240).) However, Judge Levin flagged that within the Function Report, Steve also reported difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing, as well as

---

[4] The Court summarizes in greater detail only the aspects of Judge Levin's decision relevant to deciding Plaintiff's narrow challenge. To that end, the Court notes that there appear to be minor discrepancies between Judge Levin's summary of the record and the record itself. For example, Judge Levin stated that Steve testified to being able to ambulate 10 to 50 yards. (AR at 22.) Yet, an examination of the hearing transcript reveals Steve testified to being able to "move around for a few feet or a few yards," *id.* at 37), and that it was "too difficult" for him to go "like ten or 15 yards" as part of his title searcher work (*id.* at 40). Further, Judge Levin stated that Steve reported only being able to walk 15 to 20 minutes at a time (*id.* at 22), but in his Function Report, Steve wrote that he could walk 15 to 20 *yards* (*id.* at 239). Finally, Judge Levin repeatedly referenced Steve testifying to his use of a walking stick (*id.* at 21–24), but there do not appear to be any references to a walking stick in the hearing transcript. Nonetheless, these discrepancies are not raised in Plaintiff's briefing, and the Court otherwise does not find them significant enough to vitiate the substantial evidence underlying Judge Levin's disability determination.

with handling changes in routine. (*Id.* (citing AR at 239–240).)

Based on the above, Judge Levin determined Steve's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*) However, he found Steve's statements regarding the "intensity, persistence and limiting effects" of his symptoms "not entirely consistent with the medical evidence and other evidence in the record."[5] (*Id.*)

Starting with the medical evidence in the record, Judge Levin first reviewed October 2021 emergency room and related records concerning Steve's below-the-knee amputation. (*Id.* at 22–23.) On October 1, 2021, Steve went to the emergency room for left foot pain. (*Id.* at 22 (citing AR at 363).) Judge Levin summarized that an examination revealed "a shallow ulceration to the medial aspect of the left forefoot/1st MTP joint, with necrotic base and foul odor, and surrounding erythema, warmth, and tenderness that involved the rest of the foot and extended up to the left ankle and distal aspect of the left lower leg." (*Id.* (citing AR at 364).) Steve, who was awake, alert, calm, but in mild distress, was assessed with "sepsis secondary to cellulitis or probable osteomyelitis of the left lower extremity." (*Id.* (citing AR at 377).) Among other tests and examinations, an x-ray of Steve's left foot "documented severe subcutaneous gas throughout the left foot compatible with infection." (*Id.* (citing AR at 399).)

The following day, Steve underwent emergency surgery for "left lower extremity necrotizing fasciitis" which led to a below-the-knee amputation of Steve's left leg. (*Id.* (citing AR at 377, 444).) On October 10, 2021, Steve was treated for a foot ulcer, and it was discovered that his blood sugars were elevated, leading to a diagnosis of uncontrolled diabetes mellitus. (*Id.* at 22–23; *see* AR at 508).) A few days later, Steve was diagnosed with gas gangrene on the left side and had to undergo a revision of his amputation. (*Id.* at 23 (citing AR at 550).) He was ultimately

---

[5] Judge Levin noted that Steve did not have up-to-date treatment records because he had not had health insurance for a year prior to the January 9, 2024 hearing. (AR at 22 (citing AR at 35).)

discharged from the hospital on October 22, 2021. (*Id.* (citing AR at 588).)

Next, Judge Levin reviewed 2022 treatment records from Hitesh Patel, M.D., who treated Steve for diabetes mellitus. (*Id.*) On three separate occasions, Dr. Patel assessed Steve as having a normal gait and normal motor strength, and he did not find symptoms of "polydipsia, polyuria, increased appetite, fatigue, or change in vision." (*Id.* (citing AR at 980–981, 984, 987–988, 1008–1009).) On August 24, 2022, Matthew Soos, APN examined Steve and recommended light compression therapy.[6] Nonetheless, he observed that Steve was doing well post-procedure. (*Id.* (citing AR at 1014).)

Finally, Judge Levin reviewed two PAMFs from state agency medical consultants, Mohamed Abbassi and Vaghenag Tarpinian, which he found "persuasive." (*Id.*) On October 3, 2022, Consultant Abbassi opined that Steve was "limited to light work with occasional climbing ramps and stairs and never climbing ladders, ropes or scaffolds; he was limited to occasional balancing; stooping; kneeling; crouching; or crawling." (*Id.* (citing AR at 51).) Further, he opined that Steve would need to avoid concentrated exposure to extreme cold and heat, vibration, and even moderate exposure to hazards. (*Id.* (citing AR at 52).) On February 22, 2023, Consultant Tarpinian affirmed this assessment. (*Id.* (citing AR at 57–59).)

Judge Levin found these PAMFs persuasive because while Steve did undergo a left below-the-knee amputation, he was able to ambulate. (*Id.*) Further, Judge Levin noted that Dr. Patel's reports indicated Steve's gait and strength were fully intact, and Steve's own testimony indicated that he could successfully do a myriad of things, including being able to fully care for himself. (*Id.*) Thus, Judge Levin found that "a light work capacity is overall consistent with the record." (*Id.*) Judge Levin also found the PAMFs' postural and environmental limitations to be consistent

---

[6] Judge Levin incorrectly attributed this examination to Dr. Patel in his decision. (*Compare* AR at 23 *with* AR at 1011–1014.)

with the record, given Steve's amputation and his use of a prosthetic device. (*Id.*)

## II. LEGAL STANDARD

### A. STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin,* 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel,* 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford,* 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 359 (3d Cir. 2011). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether

the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

      B.    ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

### III. DISCUSSION

Plaintiff's sole argument on appeal is that Judge Levin "did not support with substantial evidence his assessment of the [PAMFs]." (Pl. Br. at 6.) Indeed, while the Court has observed some inconsistencies between the record and Judge Levin's decision, *see supra* at 4 n.4, Plaintiff's "primary"—and only—"issue presented for review" is "[w]hether the ALJ supported with substantial evidence his assessment of the [PAMFs]." (Pl. Br. at 1; Reply Br. at 1.) Thus, because "all other issues have been waived," the Court restricts its review to this singular issued raised by Plaintiff. *Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct.

19, 2023) (collecting cases).

Under 20 C.F.R. § 404.1520c, factors an ALJ should consider when assessing medical opinions and PAMFs include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)–(5). The Third Circuit has explained that 20 C.F.R. § 404.1520c(c) "requires administrative judges to explain only two of the[] factors: whether medical opinions were (1) based on 'objective medical evidence and supporting explanations' and (2) consistent with other medical opinions in the record."[7] *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (quoting 20 C.F.R. § 404.1520c(b)(2)) (noting these factors are called "supportability and consistency for short").

Here, Plaintiff concedes Judge Levin evaluated the consistency of the prior administrative medical findings but argues that Judge Levin "did not address supportability at all." (Pl. Br. at 7.) "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMF(s)], the more persuasive the medical opinions or [PAMF(s)] will be." 20 C.F.R. § 404.1520c(c)(1). However, "a judge need not reiterate the magic word[] 'support' and 'consistent' for each doctor" and can instead "weave supportability and consistency throughout [his] analysis of which doctors were persuasive." *Zaborowski*, 115 F.4th at 639.

In both of the PAMFs at issue, Consultants Abbassi and Tarpinian each cited evidence of Plaintiff's amputation, his normal gait and motor strength, and his ability to ambulate as support for their assessments recommending various exertional limitations. (*See* AR at 51–52, 58–59.)

---

[7] The only exception is where "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same." 20 C.F.R. § 404.1520c(b)(3). In such a case, an ALJ is required to explicitly consider the other factors under 20 C.F.R. § 404.1520c(c). *Id.*

9

Similarly, in Judge Levin's decision, he too cited Plaintiff's amputation, his normal gait and motor strength, and his ambulation ability when analyzing the consultants' assessments. (*Id.* at 23–24.) Thus, "[a] fair reading of the ALJ's decision and the state agency evidence reflects that the ALJ implicitly found" that the medical evidence cited in the underlying assessments regarding Plaintiff's amputation, gait/strength, and ambulation "supported the unanimous state agency opinions that Plaintiff was capable of light exertional work." *Dustin G. v. O'Malley*, No. 22-3052, 2024 WL 4512040, at *11 (D.N.J. Oct. 17, 2024) (also finding persuasive that, as here, the ALJ "expressly acknowledged the governing regulation, 20 C.F.R. § 404.1520c, at step four before evaluating the opinion evidence"). Judge Levin clearly wove consideration of supportability into his overall analysis of the PAMFs. Thus, the Court is satisfied that Judge Levin complied with 20 C.F.R. § 404.1520c.[8]

In constructing Plaintiff's RFC, Judge Levin undertook a comprehensive evaluation of Steve's own testimony and reports, his treatment records, and the PAMFs. His evaluation of the PAMFs, in particular, included consideration of the underlying record evidence (i.e., Steve's amputation, his normal gait and strength, and his ability to ambulate), which logically led to Judge Levin's conclusion that the consultants' recommendation for a "light" work limitation was persuasive. This, along with the other record evidence cited in his thorough, nine-paged

---

[8] Even if the Court had found that Judge Levin erred, Plaintiff fails to demonstrate that such an error is harmful. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) ("Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals."). Indeed, Plaintiff concedes "it is not crystal clear whether the error was in fact harmful." (Pl. Br. at 8.) He further reasons "the record is not sufficient to demonstrate *harmless* error," (*id.* (emphasis added)), despite the fact that it is his own burden to demonstrate *harmful* error. While Plaintiff argues that the PAMFs did not consider "pertinent" evidence in the record, (*id.* at 7), including but not limited to right lower extremity venous insufficiency and small saphenous vein insufficiency, it is not for this Court to reweigh record evidence and assign persuasive value to that evidence. *Chandler*, 667 F.3d at 359. Instead, the Court's analysis ends with its determination that there is substantial evidence in the record to support Judge Levin's analysis of the PAMFs. *Fargnoli*, 247 F.3d at 38.

opinion—including Plaintiff's use of a prosthetic, his ability to care for himself, do chores, shop, and prepare meals—clearly support a finding that Judge Levin's analysis of the PAMFs (and his ultimate RFC for Steve) were supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

## **CONCLUSION**

Having reviewed the record as a whole, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

                                               _____
                                               **ROBERT KIRSCH**
                                               **UNITED STATES DISTRICT JUDGE**

Dated: November 10, 2025